<u>Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)</u>

# UNITED STATES DISTRICT COURT

for the

### Eastern District of Pennsylvania

Philadelphia Division

|  |  |  |
|---|---|---|
|  | ) | Case No. _____ |
| **John Williams,** | ) | _____ |
| _____ | ) | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) |  |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |  |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |  |
| *please write "see attached" in the space and attach an additional* | ) |  |
| *page with the full list of names.)* | ) |  |
| -v- | ) |  |
|  | ) |  |
|  | ) |  |
| **Brittany Huner,** *et al.,* | ) |  |
| _____ | ) |  |
| *Defendant(s)* | ) |  |
| *(Write the full name of each defendant who is being sued. If the* | ) |  |
| *names of all the defendants cannot fit in the space above, please* | ) |  |
| *write "see attached" in the space and attach an additional page* |  |  |
| *with the full list of names. Do not include addresses here.)* |  |  |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | John Williams |
| All other names by which you have been known: | DOC #NW7468 |
| ID Number | Pennsylvania Dept. of Corrections |
| Current Institution | SCI Phoenix |
| Address | 1200 Mokychic Drive |
| | Collegeville, PA 19426 |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Brittany Huner |
| Job or Title *(if known)* | Correctional Health Care Administrator |
| Shield Number | SCI Phoenix |
| Employer | Pennsylvania Department of Corrections |
| Address | 1200 Mokychic Drive |
| | Collegeville, PA 19426 |

☒ Individual capacity   ☒ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Jane Doe #1 |
| Job or Title *(if known)* | Health Care Provider |
| Shield Number | SCI Phoenix |
| Employer | Pennsylvania Department of Corrections |
| Address | 1200 Mokychic Drive |
| | Collegeville, PA 19426 |

☒ Individual capacity   ☒ Official capacity

Defendant No. 3
    Name                         Jane Doe #2
    Job or Title *(if known)*     Health Care Provider
    Shield Number          SCI Phoenix
    Employer             Pennsylvania Department of Corrections
    Address               1200 Mokychic Drive
                             Collegeville, PA 19426

☒ Individual capacity     ☒ Official capacity

Defendant No. 4
    Name                         Gina Orlando
    Job or Title *(if known)*     Facility Grievance Coordinator
    Shield Number          SCI Phoenix
    Employer             Pennsylvania Department of Corrections
    Address               1200 Mokychic Drive
                             Collegeville, PA 19426

☒ Individual capacity     ☒ Official capacity




*\*See additional Defendants next page*

II.     **Basis for Jurisdiction**

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.     Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

B.     Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

See Plaintiff's Statement of Claims, appended hereto.

_____

C.     Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

## ADDITIONAL DEFENDANTS:

*Defendant No. 5:*
Charles Hensley
Deputy Superintendent for Centralized Services
SCI Phoenix
Pennsylvania Department of Corrections
1200 Mokychic Drive
Collegeville, PA 19426

*Defendant No. 6:*
Joseph Terra
Facility Manager/Superintendent
SCI Phoenix
Pennsylvania Department of Corrections
1200 Mokychic Drive
Collegeville, PA 19426

*Defendant No. 7:*
Dorina Varner
Chief Grievance Officer
Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

*Defendant No. 8:*
Keri Moore
Assistant Chief Grievance Officer
Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

*Defendant No. 9:*
John or Jane Doe #3
Bureau of Health Care Services
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

*The above-named Defendants are being sued in their individual and official capacities.

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

See Plaintiff's Statement of Facts, appended hereto.

## III.    Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- [ ] Pretrial detainee
- [ ] Civilly committed detainee
- [ ] Immigration detainee
- [x] Convicted and sentenced state prisoner
- [ ] Convicted and sentenced federal prisoner
- [ ] Other *(explain)* _____

## IV.    Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.  If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B.  If the events giving rise to your claim arose in an institution, describe where and when they arose.

See Plaintiff's Statement of Facts, appended hereto.

C.    What date and approximate time did the events giving rise to your claim(s) occur?

See Plaintiff's Statement of Facts, appended hereto.

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See Plaintiff's Statement of Facts, appended hereto.

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

See Plaintiff's Injuries, appended hereto.

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

See Relief Requested by Plaintiff, appended hereto.

**VII.    Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

SCI Phoenix

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

All of Plaintiff's claims, with the exception of his claims regarding the prison grievance process itself.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☒ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E.    If you did file a grievance:

1.    Where did you file the grievance?

SCI Phoenix

2.    What did you claim in your grievance?

See *Grievance Documentation*, appended hereto at **EXHIBIT A**.

3.    What was the result, if any?

Plaintiff's grievance was denied.

4.    What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

Plaintiff appealed his grievance decision at all levels of the prison grievance process and fully exhausted the administrative remedies available to him at his place of confinement.

F.    If you did not file a grievance:

    1.    If there are any reasons why you did not file a grievance, state them here:

_____

    2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

_____

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

_____

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

_____

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B.    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit

Plaintiff(s)    _____

Defendant(s)   _____

2.    Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.    Docket or index number

_____

4.    Name of Judge assigned to your case

_____

5.    Approximate date of filing lawsuit

_____

6.    Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition.    _____

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☒ Yes

☐ No

D.  If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit

    Plaintiff(s)    (1) John Williams; (2) John Williams

    Defendant(s)   (1) Correctional Lieutenant English, *et al.*; (2) Tom Wolf, *et al.*

2.  Court *(if federal court, name the district; if state court, name the county and State)*

    (1) United States District Court for the Western District of Pennsylvania
    (2) United States District Court for the Western District of Pennsylvania

3.  Docket or index number
    (1) 3:23-CV-0244; (2) 3:20-CV-0061

4.  Name of Judge assigned to your case
    (1) U.S. District Judge Kim Gibson; (2) U.S. District Judge Stephanie Haines

5.  Approximate date of filing lawsuit
    (1) September 2023; (2) April 1, 2020

6.  Is the case still pending?

    ☒ Yes  (1) *Williams v. English, et al.*, No. 3:23-CV-0244

    ☒ No   (2) *Williams v. Wolf, et al.*, No. 3:20-CV-0061

    If no, give the approximate date of disposition

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

    (1) Case still pending.
    (2) Summary judgement entered in favor of the Defendants due to Plaintiff's failure to properly exhaust the prison grievance process.

## PLAINTIFF'S STATEMENT OF FACTS

The facts underlying Plaintiff's claims against the Defendants to the instant cause of action are as follows:

1.  Plaintiff John Williams (hereinafter "Plaintiff") is currently serving a sentence of confinement in the Pennsylvania Department of Corrections (hereinafter "DOC") pursuant to the judgement of the Court of Common Pleas of Cumberland County, Pennsylvania. (See *Commonwealth v. Williams*, No. CP-21-CR-3640-2017).

2.  Plaintiff arrived in the custody of the DOC on July 22, 2019, at the State Correctional Institution Camp Hill (hereinafter "SCI Camp Hill"), where he underwent the initial intake screening, diagnostic, and classification process the DOC requires of all newly-committed state prisoners serving a term of confinement in the DOC pursuant to the judgement of Pennsylvania state criminal trial courts. During this process, Plaintiff advised DOC medical staff that, in June 2017, prior to his arrest for the offenses of which he was convicted and is currently serving a sentence of confinement, Plaintiff underwent an extensive medical examination and diagnostic process which ultimately resulted in him being diagnosed with and treated for (1) damaged C-4, C-5, and C-6 cervical vertebrae and spinal cord nerve impingement in his neck, and (2) chronic, bilateral Carpal Tunnel Syndrome and arthritis in his fingers, hands, and wrists, by neurosurgeon Dr. Maria Elena Sumas of Carlisle, Pennsylvania. Plaintiff advised DOC medical staff that, as a result of his injuries, he is physically disabled and suffers from a limited range of motion and debilitating pain in his neck, hands, fingers, and wrists that prevents Plaintiff from reclining comfortably in bed or sleeping restfully, and impedes his ability to perform such mundane tasks or functions as, *inter alia*, handwriting personal correspondence or

1

legal documents, gripping or holding objects securely, lifting or carrying objects weighing more than 2-3 lbs., handwashing his personal clothing, opening doors, cleaning himself after defecation, using hand or power tools, and enaging in any physical activity that requires the repetitive use of his hands, arms, shoulders, neck, and head. Plaintiff described to DOC medical staff in detail the type, location, severity, and frequency of pain that his injuries typically caused him at that point in time. Plaintiff advised DOC medical staff that Dr. Sumas had prescribed him an adjustable, rigid, composite-plastic neck brace for his neck and rigid, composite plastic wrist splints for both of his hands and wrists, and had specifically advised Plaintiff to wear these medical devices as much as possible to immobilize and support his neck and wrists, relieve the pressure in his neck and wrists that was causing his pain, and prevent any further injury or damage to his neck, hands, wrists, and fingers. Plaintiff advised DOC medical staff that Dr. Sumas had also prescribed him Vicodin for pain relief and Valium to help him sleep at night despite the pain caused by his injuries. DOC medical staff advised Plaintiff that the DOC would not provide him either the neck brace and wrist splints, Vicodin, or Valium that Dr. Sumas had prescribed him as long as he was confined in the DOC.

3.   On multiple occasions between the dates of October 17, 2019 and June 30, 2023, because Plaintiff was noting a steady increase in the severity of the pain and resultant physical incapacitation his injuries were causing him, and was frequently falling out of his top bunk as result of PTSD-related night terrors and flashbacks and risking further injury to his already fragile neck and hands, Plaintiff requested that DOC medical staff provide him with a neck brace and wrist splints similar in kind to those Dr. Sumas had prescribed to him, and prescribe him medication to relieve the debilitating pain that his injuries were

causing him. However, each of these particular DOC medical staff consistently indicated to Plaintiff that the DOC would not provide him a neck brace and wrist splints, and were unwilling to prescribe Plaintiff any medications other than Ibruprofen or Naproxen to relieve the pain caused by his injuries, both of which medications were ridiculously inadequate to relieve the debilitating level of pain that Plaintiff's injuries cause him.

4.     On June 30, 2023, Plaintiff filed an ADA disability accommodation request with the Correctional Health Care Administrator at his place of confinement, Brittany Huner (hereinafter "CHCA Huner"), in which he requested that the DOC provide him with, *inter alia*, a rigid neck brace and wrist splints similar in kind to the devices provided to him by Dr. Sumas, and pain medication more effective than Ibuprofen or Naproxen. Following CHCA Huner's receipt of Plaintiff's disability accommodation request, Plaintiff was interviewed on multiple occasions by CHCA Huner and two unidentified health care providers, Jane Doe #1 and Jane Doe #2, at which times Plaintiff described in detail his injuries and diagnosis as explained to him by Dr. Sumas, the debilitating level of pain and suffering that he experiences on a daily basis as a result thereof, and the type of rigid composite-plastic neck brace and wrist splints that Dr. Sumas had prescribed to him for his injuries, and explained that the Ibuprofen and Naproxen that DOC health care providers had prescribed or offered to him were completely ineffective for relieving the type of debilitating pain his injuries caused him. At these interviews, CHCA Huner and Jane Does #1 and #2 acknowledged to Plaintiff that they had obtained a copy of his patient treatment records from Dr. Sumas and were reviewing them for the purpose of making a determination regarding Plaintiff's ADA disability accommodation request, but continued to refuse to prescribe Plaintiff any pain medication other than Ibuprofen or

Naproxen to relieve the debilitating pain his injuries were causing him.

5.    On November 20, 2023, CHCA Huner called Plaintiff to the infirmary at his place of confinement, advised him that his ADA disability accommodation request had been approved, and issued him a cervical collar and two wrist braces in response to his ADA disability accommodation request. However, the cervical collar and wrist splints issued to Plaintiff by CHCA Huner were not in any way similar in kind to the adjustable, rigid, composite-plastic neck brace and rigid, composite-plastic wrist splints that Dr. Sumas had prescribed to him for his injuries, Plaintiff had described and requested in his ADA disability accommodation request, and Plaintiff had described in detail to CHCA Huner and Jane Does #1 and #2 at the interviews conducted by them during the ADA disability accommodation review process. Instead, CHCA Huner provided Plaintiff a soft, foam-type, cervical collar typically used by Emergency Medical Services personnel for transporting patients suspected of head and/or neck injuries from accident scenes to hospitals for emergency medical care, and synthetic fabric, velcro closure-type wrist braces from which the rigid splint inserts had been purposely removed. Plaintiff immediately complained to CHCA Huner that the neck brace and wrist splints at issue were not similar in kind to those prescribed to him by Dr. Sumas, lacked any therapeutic value whatsoever, and were practically worthless because they did not properly immobilize and support Plaintiff's neck and wrists, and therefore would not relieve the pressure in his neck and hands and wrists that causes his pain and prevent his injuries and pain from worsening. CHCA Huner replied: "I'm sorry, but this is the best I can do. The rigid plastic neck brace and the rigid inserts in the wrist splints are not allowed for security reasons."

4

6.     On November 25, 2023, Plaintiff filed an inmate grievance with the Facility Grievance Coordinator at his place of confinement, Gina Orlando (hereinafter "Orlando"), restating his complaint to CHCA Huner that (1) the medical devices provided to him were practically worthless, and lacked any therapeutic value whatsoever, because these devices did not properly support and immobilize Plaintiff's neck and wrists enough to relieve at least *some* of his pain and prevent a worsening of his injuries and pain; (2) he had personally witnessed the medical department issue other inmates medical devices that were constructed of both rigid plastic and metal materials; and (3) CHCA Huner, the medical department, and the DOC were attempting to circumvent the objectives and requirements of the ADA and violating Plaintiff's rights as a disabled person by refusing to provide him with medical devices adequate to his injuries and disabilities. (See *Grievance Documentation*, appended hereto at **EXHIBIT A**). On December 22, 2023, Orlando approved and returned an initial review response to Plaintiff's grievance that was reviewed and decided by the Deputy Superintendent for Centralized Services at Plaintiff's place of confinement, Charles Hensley (hereinafter "Hensley"), in which Orlando and Hensley denied Plaintiff's grievance and justified their denial of his grievance by asserting that, because Plaintiff is being provided medical care in a correctional setting, metal and hard plastic concealed in a medical device is not permissible, the wrist splints provided to Plaintiff are still able to provide appropriate support in conjunction with his ADA disability accommodation request, and the neck brace approved via the ADA disability accommodation process was not specific for the rigid collar described in Plaintiff's grievance. (*Id*.). However, Orlando's and Hensley's initial review response to Plaintiff's

grievance was baseless, specious, and unfair, as medical devices constructed of metal and hard plastic materials are routinely provided to inmates at Plaintiff's place of confinement, the medical devices provided to Plaintiff cannot possibly immobilize and support his neck and hands and wrists adequately, and Plaintiff specifically advised CHCA Huner and Jane Does #1 and #2, both in his typewritten disability accommodation request and at interviews during the ADA disability accommodation review process, that the neck brace and wrist splints previously prescribed to him by Dr. Sumas and necessary to relieve at least *some* of his pain and prevent his injuries and pain from worsening were *rigid* medical devices. (*Id.*).

7.    On January 5, 2024, Plaintiff appealed Orlando's and Hensley's initial review response to his grievance to the Facility Manager/Superintendent at his place of confinement, Joseph Terra, on the grounds that (1) Plaintiff had specifically advised CHCA Huner and Jane Does #1 and #2, both in his typewritten disability accommodation request and verbally during the ADA disability accommodation review process, that the neck brace and wrist splints previously prescribed to him by Dr. Sumas and necessary to relieve at least *some* of his pain and prevent a worsening of his injuries and pain were constructed of rigid composite-plastic materials; (2) CHCA Huner and Jane Does #1 and #2 had obtained a copy of Plaintiff's patient treatment records from Dr. Sumas, and were therefore fully aware of the type of neck brace and wrist splints that he had been prescribed by Dr. Sumas and needed to properly treat his injuries and pain; and (3) Terra's failure to ensure that Plaintiff was provided a rigid neck brace and wrist splints would result in a worsening of the pain caused by his injuries and pain, and likely result in Plaintiff's injuries worsening to such a degree that surgery may not be able to repair them and he

6

could become permanently crippled. (*Id*.). Plaintiff then restated the complaints he had made in his initial grievance and the relief he had requested therein. (*Id*.). On January 24, 2024, Terra returned an appeal response to Plaintiff's grievance that was reviewed and decided by Terra himself, in which Terra denied Plaintiff's grievance appeal and approved of Orlando's and Hensley's initial review response to his grievance on the grounds that metal and hard plastic concealed in medical devices is not permissible, and the neck brace and wrist splints issued to Plaintiff are still able to provide the appropriate support for his injuries/conditions and are in conjunction with his approved ADA accommodation. (*Id*.). However, Terra's response to Plaintiff's grievance appeal was baseless, specious, and unfair, as medical devices constructed of metal and hard plastic materials are routinely provided to inmates at Plaintiff's place of confinement, the medical devices provided to Plaintiff are not the type of medical devices prescribed to him prior to his confinement by a physician who specializes in the treatment of his type of injuries and pain, and the medical devices provided to Plaintiff do not immobilize and support his neck and hands/wrists enough to relieve at least *some* of his pain and prevent his injuries and pain from worsening. (*Id*.).

8.  On February 8, 2024, Plaintiff submitted a final grievance appeal of Orlando's and Hensley's initial review response and Terra's appeal response to his grievance to the DOC Secretary's Office of Inmate Grievances & Appeals (SOIGA) on the grounds that (1) the medical department routinely provides medical devices constructed of metal and hard plastic materials, such as wheelchairs, crutches, canes, leg braces, walking boots, and metal-framed eyeglasses, to inmates at Plaintiff's place of confinement, and the rigid, composite-plastic neck brace and wrist splints requested by Plaintiff represent much less

7

of a hypothetical safety risk than any of these devices, or even the composite-plastic televisions and footlockers sold to state prisoners by the prison commissary department; (2) CHCA Huner and the persons who responded to Plaintiff's initial grievance and grievance appeal are not trained and licensed physicians, and their assertion that the neck brace and wrist splints issued to Plaintiff provide appropriate support for his injuries is not based not on medical science, but on their own untrained lay opinions and unwillingness to provide Plaintiff adequate medical care; and (3) Plaintiff's medical treatment should not be based upon DOC officials' unwillingness to order the medical devices appropriate for his injuries or some hypothetical risk that such devices would pose a safety risk  to staff or other inmates at Plaintiff's place of confinement. (*Id.*). Plaintiff also restated the complaints he had made in his initial grievance and the relief he had requested therein. (*Id.*). On March 29, 2024, SOIGA Chief Grievance Officer Dorina Varner (hereinafter "Varner"), by and through SOIGA Assistant Chief Grievance Officer Keri Moore (hereinafter "Moore"), served Plaintiff notice that SOIGA was referring Plaintiff's grievance to the DOC Bureau of Health Care Services (hereinafter "BHCS") for a review of the issues raised therein, and a final appeal decision regarding Plaintiff's grievance would be delayed until such time as the Bureau of Health Care Services completed its review of the issues complained of in his grievance. (*Id.*). On June 24, 2024, Moore and Varner returned a final appeal response to Plaintiff's grievance, in which Moore, Varner, and John or Jane Doe #3 (hereinafter "Doe #3") of the BHCS upheld Orlando's and Hensley's denial of Plaintiff's initial grievance and Terra's denial of Plaintiff's grievance appeal, on the grounds that the BHCS had determined that the medical care provided to Plaintiff at his place of confinement was reasonable and

8

appropriate, the BHCS's finding concurred with the initial review response to Plaintiff's initial grievance, and the BHCS found no evidence of wrongdoing by CHCA Huner and Does #2 and #3. (*Id*.). However, the final appeal response Defendants Moore, Varner, and Doe #3 provided to Plaintiff's final grievance appeal contradicted the medical care and prescribed treatment provided to Plaintiff by Dr. Sumas prior to his confinement, which had not been contraindicated by medical examinations or diagnostic tests conducted by DOC medical staff following Plaintiff's arrival into the DOC's custody, and completely ignored the fact that other prisoners at Plaintiff's place of confinement have been issued medical devices constructed of hard plastic or metal materials, including at least one metal wheelchair-bound prisoner who wears a rigid composite-plastic neck brace *identical* to the one prescribed to Plaintiff by Dr. Sumas, while Plaintiff has been denied the neck brace and wrist splints he needs because they are constructed of those same materials.

9.    At no time since Plaintiff's arrival into the custody of the DOC, or during his ADA disability accommodation review process, has any health care provider employed by the DOC conducted any form of medical examination and/or diagnostic testing to determine the extent and seriousness of Plaintiff's injuries and the severity of the pain he suffers as a result thereof. Defendant Huner's, Doe #1's, Doe #2's, Orlando's, Hensley's, Terra's, Moore's, Varner's, and Doe #3's refusal to provide Plaintiff the type of neck brace and wrist splints previously prescribed to him by Dr. Sumas, and pain medication more effective than Ibuprofen and Naproxen, was therefore not based on medical science, or the professional opinion of a trained and licensed physician who conducted the medical examinations and diagnostic testing on Plaintiff necessary to contraindicate Dr. Sumas'

9

treatment of him, but solely on the cost and/or inconvenience of ordering these medical devices for Plaintiff and the Defendants' own personal prejudices against confined and indigent state prisoners and unwillingness to provide them medical care that is comparable in adequacy to that which they would typically receive were they not confined and able to pay for their medical care, as is evidenced by the disparity in the medical care Plaintiff received from Dr. Sumas as an unconfined parolee paying for his treatment through a private health care insurance plan versus that which Plaintiff has received to date from the Defendants to the instant cause of action as a confined, indigent, uninsured state prisoner.

### **PLAINTIFF'S INJURIES**

Plaintiff alleges that, as a result of the actions or inactions of the Defendants described in the aforegoing Plaintiff's Statement of Facts section of the instant Civil Rights Complaint, Plaintiff suffered the following injuries to his person:

The Defendants refusal to provide Plaintiff adequate pain medication and the rigid neck brace and wrist splints previously prescribed to him by Dr. Sumas has caused Plaintiff to suffer an increased, debilitating level of pain in his neck, shoulders, arms, hands, fingers, and wrists for an extended period of time. The pain caused by Plaintiff's neck injury constantly prevents him from reclining comfortably in bed and sleeping restfully for more than a 2-4 hours of sleep per night, and Plaintiff awakens several times during any period of sleep that he manages to attain sobbing, moaning, or whimpering from the pain, and must either struggle to find a position in bed that alleviates the pain enough for him to fall asleep again, or get up out of bed entirely until his pain fades enough for him to return to his bed and fall asleep again. Plaintiff also now frequently experiences severe headaches that occur when Plaintiff moves his head or neck in a

particular way, which begins with a hot, fiery pain that shoots up the back and around both sides of his head to his eyes, causes Plaintiff's vision to dim to the point he feels as though he is falling into unconsciousness, as well as arm and shoulder pain that shoots a hot, fiery, pulsing pain out from his neck, across his shoulders, down his arms, through his elbows, and into his wrists. The limited range of motion and pain caused by Plaintiff's neck and hand injuries now severely impedes, and at times entirely prevents, Plaintiff from looking up or down, or to the left or right, and performing such mundane tasks or functions as handwriting and typing personal correspondence or legal documents, gripping or holding objects securely, lifting or carrying objects weighing more than 1-2 lbs., handwashing his personal clothing, opening doors, using any type of hand and power tools, cleaning himself after defecation, and enaging in any physical activity that requires the repetitive use of his hands, arms, shoulders, upper back, upper chest, neck, and head. The pain in Plaintiff's hands and fingers is now so debilitating and constant that he has to immerse his hands in hot water for 10-20 minutes every morning simply to be able to brush his teeth, button clothing, use eating utensils, or hold a drinking cup or book. Plaintiff has also detected an intermittent, but increasingly frequent, loss of feeling in both his hands and fingers and his feet and toes over the past two years. The physical pain and suffering that Plaintiff has endured, and Plaintiff's fear that the Defendants' inadequate treatment of his injuries may result in him becoming permanently crippled, have also caused Plaintiff, who the Defendants know to also be mentally disabled, to suffer significant psychological distress for an extended period of time.

## PLAINTIFF'S STATEMENT OF CLAIMS

Based on the aforegoing Plaintiff's Statement of Facts and Plaintiff's Injuries sections of the instant Civil Rights Complaint, Plaintiff alleges as follows:

***Claim I***

Defendant Huner, Doe #1, Doe #2, Orlando, Hensley, Terra, Moore, Varner, and Doe #3 discriminated against Plaintiff based on his poverty, socio-economic class, and as a disabled person, denied Plaintiff adequate medical care and a reasonable disability accommodation, and subjected Plaintiff to a cruel and unusual punishment, in violation of Title II of the Americans with Disabilities Act of 1990, codified at 42 U.S.C §§12131-12165, and the Eighth and Fourteenth Amendments to the U.S. Constitution.

***Claim II***

Defendants Orlando, Hensley, Terra, Moore, Varner, and Doe #3 denied Plaintiff access to an adequate, meaningful, and fair administrative remedy process, and failed to adequately supervise and explicitly ratified of the violation of Plaintiff's rights by Defendants Huner, Doe # 1, and Doe #2 alleged in *Claim I, supra*, in violation of the First, Eighth, and Fourteenth Amendments to the U.S. Constitution.

***Claim III***

Defendants Huner, Doe #1, and Doe #2 were professionally negligent, in violation of Pennsylvania state law, for refusing to provide Plaintiff a rigid neck brace and wrist splints similar in type and purpose to the devices prescribed to him by Dr. Sumas, and adequate medication to relieve the pain caused by Plaintiff's injuries, without conducting any medical examination or diagnostic test upon Plaintiff that contraindicated Dr. Sumas' prescribed course of treatment for Plaintiff's injuries and pain.

***Claim IV***

Defendants Orlando, Hensley, Terra, Moore, Varner, and Doe #3 were negligent in their duty of care to Plaintiff, in violation of Pennsylvania state law, for failing to ensure that Plaintiff

was provided access to adequate medical care, a reasonable disability accommodation, and an adequate, meaningful, and fair administrative remedy process at his place of confinement.

### Claim V

Defendants Orlando, Hensley, Terra, Moore, Varner, and Doe #3 intentionally and knowingly aided and abetted the professional malpractice of Defendants Huner, Doe #1, and Doe #2 alleged in *Claim III, supra*, in violation of Pennsylvania state law.

## <u>RELIEF REQUESTED BY PLAINTIFF</u>

Plaintiff requests that the District Court or a jury of his peers grant him the following relief in the instant cause of action:

### Declaratory Relief

Plaintiff requests declaratory relief finding that (1) the Defendants to the instant cause of action violated the Constitution and laws of the United States and Pennsylvania state law as alleged in *Claims I, II, III, IV, V, supra*; (2) Defendant Huner's, Doe #1's, Doe #2's, and Doe #3's response to Plaintiff's ADA disability accommodation request was so inadequate as to be meaningless and an obvious effort by these Defendants to circumvent and evade the requirements and intent of the ADA; and (3) Defendants Orlando, Hensley, Terra, Moore, Varner, and Doe #3 intentionally and knowingly refused to provide any relief in response to Plaintiff's grievance where relief was warranted, and the administrative remedy process at Plaintiff's place of confinement was not truly available to him because, despite what DOC administrative grievance policy promises, said Defendants clearly demonstrated that they were unable or unwilling to provide any relief to the aggrieved Plaintiff.

### Injunctive Relief

Plaintiff requests injunctive relief enjoining the Defendants to the instant cause of action

to (1) provide Plaintiff a rigid, composite-plastic neck brace and wrist splints similar in kind to the rigid, composite-plastic neck brace and wrist splints prescribed to him by Dr. Sumas; (2) provide Plaintiff pain medication for his injuries that is as effective for relieving the pain caused by Plaintiff's injuries as the Vicodin prescribed to him by Dr. Sumas; and (3) place Plaintiff under the medical care of a physician who specializes in the treatment of Plaintiff's type of injuries and pain and is not directly or indirectly employed by the DOC, and follow the course of treatment prescribed or recommended by this particular physician to the letter.

### *Compensatory Damages*

Plaintiff requests compensatory damages from (1) all Defendants to the instant cause of action in the amount of $500.00 per day to compensate Plaintiff for the pain and suffering he has endured as a result of the Defendants refusal to provide Plaintiff with a rigid, composite plastic neck brace and wrist splints similar in type and purpose to the devices prescribed to him by Dr. Sumas; (2) Defendants Orlando, Hensley, Terra, Moore, Varner, and Doe #3 in the amount of a lump sum of $100,000.00 to compensate Plaintiff for these Defendants' refusal to provide him access to an adequate, meaningful, and fair administrative remedy process, and concomitant failure to adequately supervise and explicit ratification of the violation of Plaintiff's rights by Defendants Huner, Doe #1, and Doe #3; and (3) all Defendants in an amount sufficient to reimburse him for all fees and costs related to the initiation and litigation of the instant cause of action.

### *Punitive Damages*

Plaintiff requests punitive damages from each of the Defendants to the instant cause of action in an amount to be determined by either a judge or jury.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS, | ) | CIVIL ACTION No. |
| Plaintiff | ) | _____ |
| | ) | |
| v. | ) | |
| | ) | |
| BRITTANY HUNER, *et al.*, | ) | |
| Defendants | ) | |

## CERTIFICATE OF MERIT AS TO BRITTANY HUNER

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of professional negligence against this defendant.

Dated: February 20, 2025

_____
John Williams
Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOHN WILLIAMS,                )        CIVIL ACTION No.
     Plaintiff                )        _____
                               )
v.                            )
                               )
BRITTANY HUNER, *et al.*,     )
     Defendants                )

## CERTIFICATE OF MERIT AS TO JANE DOE #1

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of professional negligence against this defendant.

Dated: February 20, 2025

_____
John Williams
Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOHN WILLIAMS,             )      CIVIL ACTION No.
        Plaintiff        )
                        )      _____
v.                       )
                        )
BRITTANY HUNER, *et al.*,   )
        Defendants    )

## CERTIFICATE OF MERIT AS TO JANE DOE #2

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of professional negligence against this defendant.

Dated: February 20, 2025

_____
John Williams
Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOHN WILLIAMS,                    )        CIVIL ACTION No.
      Plaintiff              )
                       )        _____
v.                                )
                       )
BRITTANY HUNER, *et al.*,          )
      Defendants             )

## <u>CERTIFICATE OF MERIT AS TO GINA ORLANDO</u>

    I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of negligence and aiding and abetting professional negligence against this defendant.

Dated: February 20, 2025

                                       _____
                                          John Williams
                                          Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>　　　　Plaintiff | ) <br> ) <br> ) | CIVIL ACTION No. |
| v. | ) <br> ) | _____ |
| BRITTANY HUNER, *et al.*,<br>　　　　Defendants | ) <br> ) <br> ) | |

## CERTIFICATE OF MERIT AS TO CHARLES HENLEY

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of negligence and aiding and abetting professional negligence against this defendant.

Dated: February 20, 2025

_____
John Williams
Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>　　　　Plaintiff | ) | CIVIL ACTION No. |
| | ) | _____ |
| | ) | |
| v. | ) | |
| | ) | |
| BRITTANY HUNER, *et al.*, | ) | |
| 　　　　Defendants | ) | |

## <u>CERTIFICATE OF MERIT AS TO JOSEPH TERRA</u>

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of negligence and aiding and abetting professional negligence against this defendant.

Dated: February 20, 2025

_____
John Williams
Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN WILLIAMS,                )        CIVIL ACTION No.
      Plaintiff            )        _____
                     )
v.                           )
                     )
BRITTANY HUNER, *et al.*,      )
      Defendants           )

## CERTIFICATE OF MERIT AS TO KERI MOORE

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of negligence and aiding and abetting professional negligence against this defendant.

Dated: February 20, 2025

                                            John Williams
                                            Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>　　　　Plaintiff | ) | CIVIL ACTION No. |
| | ) | _____ |
| | ) | |
| v. | ) | |
| | ) | |
| BRITTANY HUNER, *et al.*, | ) | |
| 　　　　Defendants | ) | |

## CERTIFICATE OF MERIT AS TO DORINA VARNER

 I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of negligence and aiding and abetting professional negligence against this defendant.

Dated: February 20, 2025

           _____
            John Williams
            Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>　　　　Plaintiff | ) | CIVIL ACTION No. |
| | ) | _____ |
| | ) | |
| v. | ) | |
| | ) | |
| BRITTANY HUNER, *et al.*, | ) | |
| 　　　　Defendants | ) | |

## **CERTIFICATE OF MERIT AS TO JANE DOE #3**

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of professional negligence, negligence, and aiding and abetting professional negligence against this defendant.

Dated: February 20, 2025

　　　　　　　　　　　　　　　　　　John Williams
　　　　　　　　　　　　　　　　　　Plaintiff

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    February 20, 2025

Signature of Plaintiff

Printed Name of Plaintiff    John Williams

Prison Identification #    DOC #NW7468

Prison Address    Pennsylvania Dept. of Corrections
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA 19426

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

|  | City | State | Zip Code |
|---|---|---|---|

Telephone Number

E-mail Address

# EXHIBIT A
*Grievance Documentation*

due 12/21/23                    Deputy Hensley                    ada

DC-804                    **COMMONWEALTH OF PENNSYLVANIA**          FOR OFFICIAL USE
Part 1                        **DEPARTMENT OF CORRECTIONS**         _____
                                                                   GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: SCI Phoenix | DATE: 11/25/2023 |
|---|---|---|
| FROM: (INMATE NAME & NUMBER) John Williams, NW7468 | SIGNATURE OF INMATE: | |
| WORK ASSIGNMENT: Kitchen 1st Shift | HOUSING ASSIGNMENT: E4-2009 | |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

On 11/20/2023, the Correctional Health Care Administrator, Ms. Hunter, issued me two wrist splints and a cervical neck collar as a means of complying with my previous disability accommodation request. However, the rigid support inserts in the wrist splints had been removed for "security reasons", and the cervical neck collar is a soft, non-rigid collar. Neither of these medical devices provide any therapeutic value for the particular medical conditions and disabilities that I suffer from. The wrist splints and neck brace previously prescribed to me by my attending physician and necessary to both alleviate the debilitating pain I suffer and prevent further injury to these areas of my body must be rigid devices. Anything less is merely an effort by Ms. Hunter and the medical department to circumvent the

B. List actions taken and staff you have contacted, before submitting this grievance.

I spoke to Ms. Hunter and my original disability accommodation request clearly stated what type of medical devices I needed for my disabilities.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____          _____
Signature of Facility Grievance Coordinator                    Date

WHITE Facility Grievance Coordinator Copy          CANARY File Copy          PINK Action Return Copy
GOLDEN ROD Inmate Copy

Page 1 of 2

**DC-ADM 804, Inmate Grievance System Procedures Manual**
**Section 1 – Grievances & Initial Review**
Issued: 1/26/2016                                              **Attachment 1-A**
Effective: 2/16/2016

objectives and requirements of the ADA, and blatant indifference on the part of these DOC staff to the pain and additional injury that I will inevitably suffer as a result of these inadequate medical devices. I have personally witnessed the medical department issue other inmates medical devices constructed of rigid materials, such as metal crutches and canes, leg braces with rigid support inserts, wheelchairs, metal-framed eyeglasses, etc. Why am I any different? Ms. Huser, the medical department, and the DOC are discriminating against me as a disabled person ~~by refusing~~ by refusing to provide me with the adequate medical devices that I need for my disabilities, and deliberately subjecting to the cruel and unusual punishment of the debilitating pain and further bodily injury that the lack of adequate medical devices will cause me to suffer, which violates my rights under the ADA and the First, Fourth, Eighth, and Fourteenth Amendments to the Federal Constitution.

I request that I be provided with the rigid medical devices necessary for my disabilities ~~or, in the alternative~~, and awarded compensatory damages in the amount of $500.00 for every day that I am denied these medical devices and experience debilitating pain and suffering, as well as punitive damages in an amount commensurate with the deliberate indifference of Ms. Huser, the medical department, and the DOC to my medical needs and pain and suffering.

Page 2 of 2



# Initial Review Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

12/22/2023 11:17

| Inmate Name: | WILLIAMS, JOHN WILLIAM | DOC #: | NW7468 |
|---|---|---|---|
| Facility: | Phoenix | Unit Location: | E / A  2009 |
| Grievance #: | 1063477 | | |

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows:

**Decision:Grievance Denied**

It is the decision of this Grievance Officer to uphold, deny, or uphold in part/deny in part the inmate's initial grievance. This response will include a brief rationale, a summary of the conclusion, any action taken to resolve the issue(s) raised in the grievance, and the relief sought.

**Response:**

This is in response to your grievance where you indicate displeasure with the medical equipment that has been issued to you. Specifically, you state that the wrist splints are not appropriate as the metal supports have been removed and the neck brace is not appropriate. You believe these devices are "blatant indifference" and demonstrate a disregard to ADA. You also state that you have witnessed other inmates receive metal items and question if you are different. As relief, you request to be provided with rigid medical devices necessary for your disabilities and awarded compensatory damages in the amount of $500.00 for everyday you are denied these devices. as well as punitive damages.

I have investigated your grievance. You were issued wrist splints and a neck brace. As we are providing care in a correctional facility/setting, metal and hard plastic concealed in a medical device is not permissible. However, the wrist splints are still able to provide appropriate support in conjunction with your ADA accommodation. Your neck brace approved via the ADA process was not specific for a "rigid collar" requested in this grievance.

You should seek sick call services for continued pain.

Your grievance and requested relief are denied.

| Signature: | |
|---|---|
| Name: | C. Hensley |
| Title: | |
| Approver: | G. Orlando  *GO* |
| Date: | 12/22/2023 |

CC: Facility Grievance Coordinator
DC-15

SCI
INMATE APPEAL TO FACILITY MANAGER
GRIEVANCE

| Inmate Number | NAME | HOUSING UNIT | DATE | GRIEVANCE# |
|---|---|---|---|---|
| NW7468 | John Williams | EA-2009 | 1/5/2024 | 1063477 |

I received my initial response from the Grievance Office/Coordinator on 12/26/2023 and have the following appeal issues.

Refer to DC-ADM 804, Grievance Appeal Procedures, for complete instructions.

Please provide a BRIEF (no longer than two pages) appeal statement.

Since my arrival into the custody of the DOC on July 22, 2019, I have continuously advised DOC medical staff that the wrist splints and neck brace prescribed by my attending physician, Dr. Maria Elena Sumas of Carlisle, Pennsylvania, to treat my Carpal Tunnel Syndrome and neck injuries were rigid black kevlar wrist splints and a rigid white plastic adjustable neck brace. During the ADA disability accommodation approval process that I recently underwent here at SCI Phoenix, I described these medical devices in great detail to both the health care provider and CHCA Huber, and the medical department obtained my health care records from Dr. Sumas. So, SCI Phoenix medical staff are well aware of the type of wrist splints and neck brace I need to properly treat my conditions. If my wrist splints and neck brace are not rigid, then my hands, wrists, and neck will not be immobilized and my conditions and the pain these conditions cause me will only continue to worsen. It is even likely that my conditions will become so severe that surgery will not be able to correct them and I will be permanently crippled.

I restate my grievance complaint and the relief I have requested.

INMATE SIGNATURE: _____



# Facility Manager's Appeal Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

01/24/2024 12:48

| Inmate Name: | WILLIAMS, JOHN WILLIAM | DOC #: | NW7468 |
| Facility: | Phoenix | Unit Location: | E / A  2009 |
| Grievance #: | 1063477 | | |

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted above. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

**Decision:Uphold Response**

It is the decision of this Facility Manager to uphold the initial response, uphold the inmate, dismiss, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

**Response:**

I am in receipt of your grievance appeal in which you claim on 11/20/2023, the CHCA Huner issued you two wrist splints and a cervical neck collar as a means of complying with your previous disability accommodation request. However, the rigid support inserts in the wrist splints have been removed for security reasons and the cervical collar is a soft, non-rigid collar. Neither of these devices provide any therapeutic value. Requested relief: that you be provided with rigid medical devices necessary for your disabilities, awarded $500.00 for compensatory damages for every day that you are denied these medical devices, punitive damages in an amount commensurate with the deliberate indifference of CHCA Huner, the DOC to your medical needs, and pain and suffering.

In my investigation, I find that the response by Deputy Hensley is appropriate as metal and hard plastic concealed in medical devices are not permissible. However, the devices you have been issued as per your ADA accommodation are still able to provide appropriate support and are in conjunction with your approved ADA accommodation.

Additional information will not be addressed as it was not in the initial grievance.

I will uphold the decision of the grievance officer and deny your appeal and requested relief.

| Signature: | |
| Name | J. Terra |
| Title: | Facility Manager |
| Date: | 1-24-24 |

CC: DC-15
File

---

## INMATE APPEAL TO FINAL REVIEW
## GRIEVANCE

| INMATE NUMBER | NAME | FACILITY | DATE | GRIEVANCE# |
|---|---|---|---|---|
| NW1468 | John Williams | SCI Phoenix | 2/8/2024 | 1063477 |

I received my appeal from the Superintendent on _2/1/2024_ and have the following appeal issues:

Refer to DC-ADM 804, Grievance Appeal Procedures, for complete instructions.
Appeals must relate to the issue presented in the initial grievance and 1st level appeal.

Please provide a BRIEF (no longer than two pages) appeal statement.

The premise of the Initial Review Response and Facility Manager's Appeal Response in the above-referenced grievance matter is faulty for the following reasons:

*First*, I have personally witnessed other inmates at SCI Phoenix using or wearing medical devices issued by the Medical Department that have metal and/or hard plastic supports or parts, such as: wheelchairs, crutches, canes, leg braces, walking boots, and metal-framed eyeglasses. The medical devices that I have requested for my own conditions represent much less of a hypothetical safety risk than these types of medical devices, or, for that matter, the televisions and footlockers that the DOC sells on the prison commissary.

*Second*, the individual who ordered the medical devices that I am complaining about, CHCA Huner, and the individuals who responded to my initial grievance and grievance appeal, Deputy Superintendent C. Hensley and Superintendent J. Terra, are *not* trained and licensed physicians, so their conclusions that the medical devices issued to me "provide appropriate support" for my conditions are not based on medical science, but on their own *untrained* lay opinions and their unwillingness to provide me adequate medical care. The neurosurgeon who prescribed me the medical devices that I am requesting from the DOC will certainly provide a contrary *expert* opinion.

My medical treatment should *not* be based upon DOC officials unwillingness to order the appropriate medical devices for my conditions, or some hypothetical risk that my devices would pose a safety risk within the institution.

I restate the issues complained of and the relief requested in my grievance.

INMATE SIGNATURE: _John Will_

## Grievance Referral
## (Notice to Inmate)

Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050



03/29/2024 03:24

| Inmate Name: | WILLIAMS, JOHN WILLIAM | DOC #: | NW7468 |
| Rows continue | | | |

| Inmate Name: | WILLIAMS, JOHN WILLIAM | DOC #: | NW7468 |
|---|---|---|---|
| SCI Filed: | Phoenix | Current SCI: | Phoenix |
| Grievance #: | 1063477 | | |

This serves to acknowledge receipt of your appeal to final review for the grievance noted above. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", this Office has reviewed the documents submitted; including your initial grievance, the grievance officer's response, your appeal to the facility manager, the facility manager's response, and the issues you raised to final review. Upon completion of this review, it is the determination of this Office to solicit input from an appropriate Central Office Bureau relative to the issue(s) raised in your grievance. Therefore, please be advised that the final review decision will be delayed pending review by the office to which it has been referred. Upon completion of this review, however, a determination will be made and you will be provided with a final appeal decision in writing.

**Action: Referral**

**Bureau/Office:**

- Health Care - Referral Date : 03/29/2024

| Signature: | *Keri Moore for* |
|---|---|
| Name: | D. Varner |
| Title: | Chief Grievance Officer |
| Date: | 03/29/24 |

cc:  DC-15/Superintendent - Phoenix
     Grievance Office

---

DC-ADM 804, Inmate Grievance System Procedures Manual

Section 2 - Appeals, Attachment 2-I                    Issued: 1/26/2016  Effective: 2/16/2016

NW7468      Grievance #:1063477

WILLIAMS, JOHN WILLIAM                                                    Page1 of 1



**PA**

06/24/2024 09:04

### Final Appeal Decision

Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

| Inmate Name: | WILLIAMS, JOHN WILLIAM | DOC #: | NW7468 |
|---|---|---|---|
| SCI Filed: | Phoenix | Current SCI: | Phoenix |
| Grievance #: | 1063477 | | |

This serves to acknowledge receipt of your appeal to the Secretary's Office of Inmate Grievances and Appeals for the grievance noted above. In accordance with the provisions of DC-ADM 804, Inmate Grievance System Policy, the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to the Facility Manager, the Facility Manager's response, the issues you raised to final review, and (when applicable) any revised institutional responses required as a result of a subsequent remand action by this office. As necessary, input from appropriate Central Office Bureaus (e.g., Health Care Services, Chief Counsel, Office of Special Investigations and Intelligence, etc) may have been solicited in making a determination in response to your issue as well.

**Decision:Uphold Response**

It is the decision of the Secretary's Office of Inmate Grievances and Appeals to uphold the initial response, uphold the inmate, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

**Response:**

The staff at the Bureau of Health Care Services reviewed your concern of not being provided proper medical care. They have thoroughly reviewed your medical record and has determined that the medical care provided was reasonable and appropriate. Their findings concur with the initial review response.

Your attending practitioner makes these clinical decisions. You are encouraged to participate in your treatment plan and to discuss your concerns or changes of condition with a practitioner. They found no evidence of wrongdoing. Therefore, this office upholds the responses provided to you and your requested relief is denied.

| Signature: | Keri Moore for. |
|---|---|
| Name: | D. Varner |
| Title: | Chief Grievance Officer |
| Date: | 06/24/24 |

CC:  DC-15/Superintendent - Phoenix
Grievance Office

---

John Williams
DOC #NW7468
SCI Phoenix
Pennsylvania Dept. of Corrections
1200 Mokychic Drive
Collegeville, PA 19426



quadient
FIRST-CLASS MAIL
IMI
$003.15
ZIP 19426
041M11248366
US POSTAGE

**United States District Court**
**Eastern District of Pennsylvania**
**Office of the Clerk**
**United States Courthouse**
**Independence Mall West**
**601 Market Street**
**Philadelphia, PA 19106**



RECEIVED
FEB 20 2025