## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN WILLIAMS,                          :
    Plaintiff,                       :
                                     :
v.                                      :          **CIVIL ACTION NO. 25-CV-0928**
                                     :
BRITTANY HUNER, *et al.*,                :
    Defendants.                      :


## <u>MEMORANDUM</u>

**GOLDBERG, J.**                                                    **JULY 22, 2025**

Plaintiff John Williams, a convicted prisoner currently incarcerated at SCI Phoenix, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights arising from alleged deliberate indifference to his serious medical needs. Currently before the Court are Williams's Complaint ("Compl." (ECF No. 1)), his Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 4), and his Prisoner Trust Fund Account Statement. (ECF No. 5.) Williams asserts claims against the following SCI Phoenix employees: Correctional Health Care Administrator Brittany Huner, Health Care Providers Jane Does 1 and 2, Facility Grievance Coordinator Gina Orlando, Deputy Superintendent for Centralized Services Charles Hensley, and Superintendent Joseph Terra. (Compl. at 2-4.) He also asserts claims against Chief Grievance Officer Dorina Varner and Assistant Chief Grievance Officer Keri Moore, who are alleged to be employees of the Secretary's Office of Inmate Grievances & Appeals, and Bureau of Health Care Services employee John or Jane Doe 3. (*Id*. at 4.) Williams asserts his claims against the Defendants in their individual and official capacities. (*Id*. at 2-4.) For the following reasons, the Court will grant Williams leave to proceed *in forma pauperis*. Williams's constitutional claims

and his derivative supervisory liability claims, his claims asserted under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12165 ("ADA"), his claims against Defendants Orlando, Hensley, Terra, Varner, Moore, and Doe 3 based on their participation in the grievance process, his request for declaratory and injunctive relief, and his official capacity claims will be dismissed with prejudice. Williams's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction, but without leave to amend.

## I.    FACTUAL ALLEGATIONS[1]

The gravamen of Williams's claim is that he requested and was denied rigid braces for his neck and wrists to relieve pain associated with damaged cervical vertebrae and Carpal Tunnel Syndrome, respectively, and to prevent further injury. Williams alleges that he arrived at SCI Camp Hill on July 22, 2019. (Compl. at 12.) Upon arrival, he underwent an intake screening, diagnostic, and classification process required of all newly committed state prisoners. (*Id*.) During this process, Williams advised medical staff that in June 2017, following an examination, he was diagnosed with damaged cervical vertebrae and spinal cord nerve impingement in his neck, and chronic, bilateral Carpal Tunnel Syndrome and arthritis in his fingers, hands, and wrists. (*Id*.) He advised medical personnel that he had been receiving treatment for these conditions, and that these conditions rendered him disabled in that he suffered from a limited range of motion and debilitating pain that prevented him from reclining comfortably and also impeded his ability to perform daily

---

[1] The factual allegations set forth in this Memorandum are taken from Williams's Complaint (ECF No. 1). The Court adopts the pagination supplied by the CM/ECF docketing system. Where appropriate, grammar, spelling, and punctuation errors in Williams's pleading will be corrected for clarity. Williams includes the following Exhibits with his Complaint: a completed grievance form, an Initial Review Response, a completed Inmate Appeal to Facility Manager Grievance, a Facility Manager's Appeal Response, a completed Inmate Appeal to Final Review Grievance, a Grievance Referral Notice, and a Final Appeal Decision. (Compl. at 37-44.)

functions such as hand writing notes or legal documents, gripping or holding objects, lifting or carrying objects, handwashing his clothing, attending to his personal hygiene, using power tools, or engaging in any repetitive use of his hands, arms, shoulders, neck and head. (*Id*. at 12-13.) He further advised prison medical personnel that before his incarceration an outside physician had prescribed an adjustable rigid composite-plastic neck brace and rigid composite-plastic wrist guards, and instructed him to wear these devices as much as possible to immobilize and support his injured neck and wrists. (*Id*. at 13.) Additionally, Williams advised the SCI Camp Hill staff that he had been prescribed Vicodin for pain relief and Valium to help him sleep. (*Id*.) Despite these prescriptions, unidentified medical personnel told Williams he would not be provided with the neck or wrist braces or the Vicodin or Valium as long as he was a Department of Corrections ("DOC") inmate. (*Id*.)

Between October 2019 and June 2023, Williams experienced a steady increase in the severity of his pain and physical incapacitation. (*Id*. at 13.) During this period, he also fell out of his top bunk because of PTSD-related night terrors, further injuring his neck and wrists. (*Id*.) Williams requested that medical staff provide him with neck and wrist braces similar to those which had been previously prescribed to him. (*Id*.) He also requested medication to ease his pain. (*Id*.) However, he was consistently told by unidentified personnel that he would not be provided with rigid neck or wrist braces, and that only Ibuprofen or Naproxen would be provided for pain relief. (*Id*. at 14.) On June 30, 2023, Williams filed an ADA disability accommodation request with Defendant Huner, requesting that the DOC provide him with a rigid neck brace and wrist braces similar to those he had been prescribed in the past, and pain medication more effective than Ibuprofen or Naproxen. (*Id*.) Following Huner's receipt of the request, Williams was interviewed by Huner and Jane Does 1 and 2. (*Id*.) During the interview, Williams described his diagnoses,

3

the pain associated with his conditions, and the type of rigid braces that had been prescribed in the past, and also explained that the Ibuprofen and Naproxen he had been prescribed by DOC health care providers were completely ineffective for relieving his pain. (*Id*.) Williams was informed that Huner and Jane Does 1 and 2 had obtained his treatment records and were reviewing them for the purpose of making a decision regarding Williams's ADA disability accommodation request. (*Id*.) However, they continued to refuse to provide any pain medication other than Ibuprofen or Naproxen. (*Id*. at 14-15.)

On November 20, 2023, Huner advised Williams that his ADA accommodation request had been approved and issued him a cervical collar and wrist braces. (*Id*. at 15.) However, rather than the rigid braces he requested and had been previously prescribed, Williams received a soft, foam-like collar and fabric, Velcro-closure wrist braces from which the rigid inserts had been removed. (*Id*.) Williams complained that these neck and wrist braces did not properly immobilize his neck and wrists and therefore would not relieve pain or prevent further injury. (*Id*.) Huner responded that the rigid plastic neck brace and rigid inserts for the wrist braces were not allowed for security reasons. (*Id*.)

On November 25, 2023, Williams filed a grievance with Defendant Orlando asserting that the medical devices provided to him were worthless because they did not immobilize his neck and wrists enough to relieve his pain or prevent further injury. (*Id*. at 16.) He also asserted that other inmates had been issued medical devices that included rigid plastic and metal materials. (*Id*.) Finally, he asserted that Huner, the SCI Phoenix medical department, and the DOC were circumventing the requirements of the ADA and violating his rights as a disabled person by refusing to provide him with adequate medical devices. (*Id*.) On December 22, 2023, Williams received a response to his grievance prepared by Defendants Orlando and Hensley which denied

4

his grievance on the ground that metal and hard plastic were not permissible in a correctional setting, and that the devices issued to Williams provided appropriate support. (*Id.*)  Williams alleges that the response to his grievance was "baseless, specious, and unfair" because medical devices including rigid plastic and metal are routinely provided to inmates at SCI Phoenix, and the devices issued to Williams provided inadequate support, were not the same as the ones prescribed to him before he was incarcerated, and did not provide adequate pain relief or protection from further injury. (*Id*. at 17.)

On January 5, 2024, Williams appealed the initial denial of his grievance to Defendant Terra, asserting that (1) he had specifically advised Huner and Does 1 and 2 that the rigid braces prescribed by his outside physician were necessary to relieve his pain and prevent further injury; (2) Huner and Does 1 and 2 had reviewed his medical records and were aware that he had been previously prescribed rigid braces and why; and (3) failure to ensure that Williams was provided with rigid braces would result in the worsening of his pain and possible further, irreparable injury to his neck and wrists. (*Id*.)  On January 24, 2024, Terra denied Williams's appeal and approved Orlando and Hensley's denial of his initial grievance on the grounds that rigid braces were not permissible, and the braces issued to Williams provided adequate support. (*Id*. at 18.)  Williams alleges that Terra's response was "baseless, specious, and unfair," because medical devices including rigid plastic and metal are routinely provided to inmates at SCI Phoenix, and the devices issued to Williams provided inadequate support, were not the same as the ones prescribed before Williams was incarcerated, and did not provide adequate pain relief or protection from further injury. (*Id*.)

On February 8, 2024. Williams filed a final grievance appeal of Orlando and Hensley's initial review response and Terra's appeal response with the DOC Secretary's Office of Inmate

Grievance Appeals, arguing that (1) the medical department routinely issued medical devices constructed of rigid materials, such as wheelchairs, crutches, leg braces, walking boots, and eyeglasses, to inmates, and the neck and wrist braces Williams requested posed much less of a safety threat than those items; (2) Huner and Does 1 and 2 were not trained and licensed physicians and their lay opinions as to the adequacy of the braces issued to Williams were not based on medical science but on their unwillingness to provide Williams with adequate medical care; and (3) Williams's medical treatment should not be conditioned on the hypothetical risk posed by the devices he had been previously prescribed. (*Id*. at 19.) On March 29, 2024, Varner and Moore served Williams notice that his appeal had been referred to the DOC Bureau of Health Care Services. (*Id*.) On June 24, 2024, Moore, Varner, and Doe 3 returned a final appeal response to Williams that upheld Orlando and Hensley's initial review and Terra's denial of his appeal on the grounds that, *inter alia*, the medical care provided to Williams was reasonable and appropriate, and Huner and Does 1 and 2 had not engaged in wrongdoing. (*Id*. at 19-20.) Williams alleges that the final appeal response provided by Moore, Varner, and Doe 3 contradicted the treatment provided by his physician prior to his incarceration though that plan had not been contraindicated based on any medical examination or diagnostic tests performed on Williams during his incarceration, and that it ignored the fact that other inmates were issued devices with metal and rigid plastic parts, including the identical neck brace that Williams had requested. (*Id*. at 20.)

Williams further alleges he has not been examined by a health care provider while in the custody of the DOC and has not undergone any diagnostic testing. (*Id*.) He claims that as a result, the decisions rendered by the Defendants with respect to the type of neck and wrist braces to be provided to him were not based on medical science, but instead were based on the cost or inconvenience of ordering the correct devices, or on the Defendants' personal prejudices against

6

confined and indigent state prisoners, and their unwillingness to provide medical care similar to that which was available to Williams before he became incarcerated.  (*Id*. at 20-21.)

Williams alleges that as a result of the Defendants' conduct, he has experienced increased pain and disability, inability to sleep comfortably, headaches, and limited range of motion which impacts his ability to perform day-to-day tasks.  (*Id*. at 21-22.)  He has also experienced anxiety over the prospect of becoming permanently crippled, as well as associated psychological distress. (*Id*. at 22.)  Williams asserts First, Eighth, and Fourteenth Amendment claims,[2] a claim under Title II of the ADA, and related state law claims.  (*Id*. at 22-24.)  As relief, Williams requests a declaratory judgment,[3] injunctive relief,[4] and money damages.  (*Id*. at 24-25.)

---

[2] The Court understands Williams's Fourteenth Amendment claim to be based on the Defendants' alleged deliberate indifference to his serious medical needs.  (*See, e.g.*, Compl. at 23, Claim I.) Although the standards under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of analysis, *see Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care), because it appears that Williams was a convicted prisoner at the time of the events in question, the Eighth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Because the Complaint includes no facts that could support a plausible Fourteenth Amendment claim not based on alleged indifference to serious medical needs, Williams's Fourteenth Amendment claims will be dismissed without prejudice.

[3] Williams seeks a declaration that the Defendants' conduct violated his rights.  (Compl. at 24.) However, declaratory relief is unavailable to adjudicate past conduct, so Williams's request for declaratory relief is improper.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm."); *Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  For these reasons, Williams's request for declaratory relief will be denied with prejudice.

[4] Williams requests a mandatory injunction requiring the Defendants to provide him with rigid, composite-plastic neck brace and wrist splints similar to those prescribed to him before he became incarcerated, pain medication similar to Vicodin, and medical care from a physician specializing

## II.    STANDARD OF REVIEW

The Court will grant Williams leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5]    Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.    Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).    At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim.    *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice.    *Iqbal*, 556 U.S. at 678.    As Williams is proceeding *pro se*, the Court construes his allegations liberally.    *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021)

---

in the treatment of the conditions with which Williams has been diagnosed.    (Compl. at 25.) Issuance of an injunction is an extraordinary remedy, granted only when a plaintiff faces irreparable injury.    *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982). In keeping with the general reluctance of any court to exercise its discretion in the absence of a compelling need for extraordinary relief, a plaintiff must allege a real danger that the act complained of will actually take place.    An "injunction issues to prevent existing or presently threatened injuries.    One will not be granted against something merely feared as liable to occur at some indefinite time in the future."    *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931).    In light of the Court's dismissal of Williams's constitutional, ADA, and state law claims, his request for injunctive relief, too, will be dismissed.    He may include this claim in an amended complaint if he can assert allegations as described herein.

[5] Because Williams is a prisoner, the Prison Litigation Reform Act requires that he pay the full filing fee in installments regardless of the outcome of this case.

(citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  Additionally, the Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").

## III.    DISCUSSION

Williams asserts claims based on alleged violations of his constitutional rights.  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

### A.    Official Capacity Claims

Williams seeks recovery of money damages against the Defendants in their official capacities.  All of the Defendants are identified as employees of the Pennsylvania DOC.  The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are

also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court.

However, Williams may pursue his claims for money damages against state officials sued in their individual capacities, because state officials sued in their individual capacities are "persons" within the meaning of § 1983, s*ee Hafer*, 502 U.S. at 31, and the Eleventh Amendment does not bar suits for monetary damages brought under § 1983 against state officials in their individual capacities. *Id.* Additionally, the Eleventh Amendment does not generally bar prospective declaratory or injunctive relief. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (explaining that "official-capacity actions for prospective relief are not treated as actions against the State"); *see also Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (holding that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief."); *O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016). Thus, while Williams may pursue prospective injunctive relief on an official capacity claim against state employees, he may not pursue money damages on those claims. Accordingly, his official capacity claims, to the extent he seeks money damages, must be dismissed with prejudice. His official capacity claims seeking prospective injunctive relief will also be dismissed with prejudice in light of the dismissal of his constitutional and ADA claims, discussed below.

### B.    Claims Based on Deliberate Indifference to Serious Medical Needs

Williams asserts Eighth Amendment deliberate indifference claims against all of the named Defendants, yet none of the Defendants, other than Jane Does 1 and 2, is alleged to have been a

medical professional from whom Williams sought treatment.  Additionally, other than Huner, who allegedly refused to provide Williams with the types of hard braces he desired, most of the Defendants are alleged to have done no more than participate in the grievance process after Williams was issued soft neck and wrist braces, but was denied the particular rigid neck and wrist braces he had been prescribed before he was incarcerated.  These circumstances provide bases for dismissal of the claims Williams asserts against these Defendants, as discussed later.  His Eighth Amendment claims, even if they were asserted against individuals personally involved in his care, are not plausible as pled.

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Inadequate medical care rises to the Eighth Amendment level only when a plaintiff can show both a serious medical need and acts or omissions by prison officials that indicate deliberate

indifference to that need. *Estelle v. Gamble,* 429 U.S. 97, 102, (1976).  Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*).  "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id*. (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'") (*per curiam*) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).  Additionally, "if a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.").

Williams alleges that prior to his incarceration, he was diagnosed with damaged cervical vertebrae and spinal cord nerve impingement in his neck, and chronic, bilateral Carpal Tunnel Syndrome and arthritis in his fingers, hands, and wrists, for which he was prescribed rigid neck

and wrist braces. (Compl. at 12.) Upon arriving at SCI Camp Hill, he advised personnel of his diagnosis and treatment, but was not issued any braces. Years later, at SCI Phoenix, Williams sought braces as an ADA accommodation. While he was successful in obtaining an accommodation, the braces he was issued were soft, and Defendant Huner explained that the rigid plastic neck brace and rigid inserts for the wrist braces were not allowed for security reasons. (Compl. at 15.) Despite efforts to reverse this decision through the grievance process, Williams was not issued rigid braces, notwithstanding his claims that the soft braces are inadequate to relieve his pain and protect his joints. Williams's claim, as pled, is based on the adequacy of the care he has been receiving, not on a denial of care. As such, he has not stated a plausible claim for deliberate indifference to his serious medical needs. *Davis*, 597 F. App'x. at 45.

Additionally, as noted, Williams was told that the braces he wanted were not permitted for security reasons. Based on this expressed concern for institutional security, Williams has failed to establish a claim of deliberate indifference for the refusal to provide him with rigid braces. *See Whitley v. Albers,* 475 U.S. 312, 321–22 (1986) (holding that prison officials should be accorded wide ranging deference in the adoption and execution of policies necessary to preserve internal order and maintain institutional security); *Lerma v. Bell,* 2 F. App'x 782, 784 (9th Cir.2001) (affirming district court grant of summary judgment to defendants who confiscated the plaintiff's elastic knee brace for legitimate safety concerns); *Estien v. Showalter*, No. 13-2474, 2014 WL 4916333, at *11 (M.D. Pa. Sept. 30, 2014) (granting motion to dismiss where inmate failed to establish a claim of deliberate indifference based on medical personnel's failure to provide him with a thumb brace, citing safety concerns). In light of the nature of the deficiencies in Williams's Eighth Amendment claim, amendment would be futile, and, therefore, his Eighth Amendment claims will be dismissed with prejudice and without leave to amend. *Grayson v. Mayview State*

13

*Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002); *see also Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

C.    **Supervisory Liability Claim**

Williams asserts that Defendants Orlando, Hensley, Terra, Moore, Varner, and Doe 3, "failed to adequately supervise, and explicitly ratified" the conduct of Defendants Huner and Does 1 and 2. (*See* Compl.)  Other than this conclusory allegation that cannot state a plausible claim, *see Iqbal*, 556 U.S. at 678, the only allegations as to these Defendants describe their participation in the grievance process; they are not alleged to have otherwise participated in decisions regarding Williams's medical care and the absence of factual allegations describing their personal involvement in the alleged denial of his constitutional rights renders these claims not plausible. *See Rode*, 845 F.2d at 1207.  Moreover, to the extent Williams seeks to assert claims against these Defendants based on the conduct of other SCI Phoenix employees, he cannot do so, because liability under § 1983 cannot be predicated on a *respondeat superior* basis.  *Chavarriaga*, *v. New Jersey Dept. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2023) (*per curiam*).    Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d

14

Cir. 2005)).   Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability."  *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).   First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).   "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Chavarriaga*, 806 F.3d at 227.   Additionally, a supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisory prison official.  *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation).   Because Williams has not stated a plausible underlying claim, the derivative claims based on the Defendants' alleged supervisory positions must also be dismissed with prejudice.

###    D.    Claims Based on Grievances

Williams asserts claims against Orlando, Hensley, Terra, Varner, Moore, and Doe 3 based upon their participation in the grievance process following Huner and Does 1 and 2's refusal to issue him rigid neck and wrist braces in connection with his successful request for an ADA

accommodation.  (*See* Compl., generally and Claim 2)  These claims are not plausible because in general, "[m]erely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (*per curiam*); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) *(per curiam)* ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (*per curiam*) (defendants' alleged inappropriate responses to plaintiff's "later-filed grievances" were insufficient to establish those defendants' personal involvement in underlying wrongs).

Additionally, claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures."  *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).  Accordingly, claims such as those raised by Williams predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim.  *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted));

*Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).  Accordingly, Williams's claims against these Defendants are not plausible and will be dismissed with prejudice.

### E. Claims Based on Violation of ADA

Williams asserts claims under the ADA against all of the named Defendants.  (*See* Compl.) The Court understands these claims to be based on the refusal to issue Williams rigid braces for his neck and wrists.[6]  To allege a plausible violation of Title II of the ADA, a plaintiff must assert that (1) he is a "qualified individual with a disability;" (2) he is being excluded from participation in or being denied the benefits of some "services, programs, or activities," by reason of his disability; and (3) the entity which provides the service, program or activity is a public entity.  *See, e.g., Layton v. Elder*, 143 F.3d 469, 472 (8th Cir.1998); *Bowers v. National Collegiate Athletic Ass'n*, 9 F. Supp. 2d 460, 475 (D.N.J. 1998); *Adelman v. Dunmire*, No. 95-4039, 1997 WL 164240 (E.D. Pa. Mar. 28, 1997).  To be considered a "qualified individual with a disability" under the statute, a plaintiff must allege that he has a "disability" which is defined as "a physical or mental

---

[6] Section 202 of the ADA provides:

> Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The United States Supreme Court has held that Title II of the ADA applies to state prisons and inmates.  *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting the phrase "services, programs, or activities" includes recreational, medical, educational, and vocational prison programs).

impairment that substantially limits one or more major life activities of such individual. . . ."  42

U.S.C. § 12102(1)(A).  "[M]ajor life activities include, but are not limited to, caring for oneself,

performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending,

speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  *Id.*

at § 12102(2)(A).  With the passage of the Americans with Disabilities Act Amendments Act,

Congress declared that "[t]he definition of disability shall be construed in favor of broad coverage

of individuals under this Act, to the maximum extent permitted by the terms of this Act."  Pub. L.

No. 110–325, §§ 2(b)(1)-(6), 3(2)(a), § 4(a), 122 Stat. 3553, 3555.  Additionally, the ADAAA

requires a "less searching analysis" of whether a plaintiff is "substantially limited."  *Kravits v.*

*Shinseki*, No. 10–861, 2012 WL 604169, at *7 (W.D. Pa. Feb. 24, 2012).

    The proper defendant under a Title II claim is a public entity or an individual who controls

or directs the functioning of the public entity.  *See Emerson v. Thiel College*, 296 F.3d 184, 189

(3d Cir. 2002).  Therefore, as an initial matter, any individual capacity ADA claims against the

Defendants must be dismissed with prejudice because they are not "public entities" within the

meaning of the ADA, nor is it alleged that any of these Defendants controls or directs the

functioning of an appropriately identified public entity.  *See Kokinda v. Pennsylvania Dep't of*

*Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual

damages liability under Title II of the ADA fail for the simple reason that there is no such

liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District

Court could have properly followed the holdings of those circuits which have concluded that there

is no individual damages liability under Title II of the ADA, which provides an additional basis to

affirm the dismissal of this claim.").

Williams's ADA claim, additionally, is not plausible as pled even if he had named an appropriate public entity defendant. Although Williams broadly alleges that he was discriminated against, he attributes the basis of the discrimination to cost-savings and "the Defendants' own personal prejudices against confined and indigent state prisoners" and not to any disability associated with his neck or wrist conditions. (*See* Compl. at 21.) Additionally, he concedes that when he requested an accommodation for his disability, it was granted, but not in the exact way he desired since he was issued soft neck and wrist braces rather than rigid devices. (*Id*. at 15.) The Defendants' refusal to provide rigid neck and wrist braces, rather than soft braces are treatment decisions and do not provide a basis for a plausible claim. *Nunez v. Prime Care Health, Inc.*, No. 19-0859, 2019 WL 1400466, at *1 n.3 (E.D. Pa. Mar. 27, 2019) ("decisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA," citing cases); *see also Kokinda*, 663 F. App'x at 159 ("The District Court was also correct to conclude . . . that Kokinda's ADA claims fail because the ADA prohibits disability-based discrimination, not inadequate treatment for the disability." (footnotes and internal quotations omitted)).

Additionally, monetary damages, such as those sought by Williams, are not available under the ADA absent a showing of intentional discrimination. *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018)). "To prove intentional discrimination, an ADA claimant must prove at least deliberate indifference, and to plead deliberate indifference, a claimant must allege (1) knowledge that a federally protected right is substantially likely to be violated and (2) failure to act despite that knowledge." *Id.* (internal citation and ellipses deleted). A plaintiff can plead deliberate indifference in two ways: "first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs,' or, second, by alleging facts indicating that [plaintiff] could prove that the risk of cognizable harm

19

was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference." *Id.* (internal quotation marks and ellipses deleted). Here, Williams has not identified any policy that resulted in a failure to respond to situations such as that in which Williams found himself, or, indeed, a failure to respond to any identified risk. To the contrary, Williams successfully petitioned for an accommodation for his disability – he simply was not satisfied with the accommodation provided.

Because amendment would not cure the deficiencies in Williams's ADA claims, they will be dismissed with prejudice. *Grayson*, 293 F.3d at 108; *Shane*, 213 F.3d at 116.

### F.    State Law Claims

Williams asserts professional negligence claims against Defendants Huner and Does 1 and 2, and asserts negligence claims and claims for aiding and abetting professional malpractice against Defendants Orlando, Hensley, Terra, Varner, Moore, Doe 3. (Compl. at 24.) Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any of Williams's state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the

state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Williams does not allege the citizenship of the parties. Rather, he provides only the address of SCI Phoenix for himself, and SCI Phoenix or DOC business addresses for the Defendants. (Compl. at 2-4.) All of the addresses are in Pennsylvania, which suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens. Accordingly, Williams has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any of the state law claims he intends to pursue. His state law claims will therefore be dismissed without prejudice for lack of subject matter jurisdiction and without leave to amend. Instead, Williams may pursue these claims in an appropriate state court.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Williams leave to proceed *in forma pauperis*. Williams's constitutional claims and his derivative supervisory liability claims, his claims asserted under Title II of the ADA, his claims against Defendants Orlando, Hensley, Terra, Varner, Moore, and Doe 3 based on their participation in the grievance process, his request for declaratory and injunctive relief, and his official capacity claims will be dismissed with prejudice.

Williams's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction, but without leave to amend.

An appropriate Order follows.